```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------X
REGINALD RHODES,

                Petitioner,

         -against-                           02 Civ. 7860 (DAB)
                                             PARTIAL ADOPTION
DANIEL SENKOWSKI, Superintendent,            OF REPORT AND
     Clinton Correctional Facility,          RECOMMENDATION

                Respondent.
-------------------------------------X
```
DEBORAH A. BATTS, United States District Judge.

On March 16, 2005, United States Magistrate Judge Henry B. Pitman issued a Report and Recommendation ("Report"), recommending that Petitioner's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 be denied in its entirety. (Report at 26). Pursuant to 28 U.S.C. § 636(b)(1)(C), "[w]ithin ten days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations." 28 U.S.C. § 636(b)(1)(C); see also Fed. R. Civ. P. 72(b) (stating that "[w]ithin 10 days after being served with a copy of the recommended disposition, a party may serve and file specific, written objections to the proposed findings and recommendations"). Where no timely objection has been made, "a district court need only satisfy itself there is no clear error on the face of the record." Nelson v. Smith, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985). After conducting the appropriate level of

review, the Court may then accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate. 28 U.S.C. § 636(b)(1)(C); see also Local Civil Rule 72.1(d). Petitioner has raised four objections[1] to Judge Pitman's Report, and Respondent has raised one objection.  The Court therefore will review the objected-to portions of the Report de novo.

The facts in this matter are largely set forth in the Report and unless relevant will not be reiterated here.

I. DISCUSSION

A. Ineffective Assistance of Counsel

Petitioner objects to Judge Pitman's recommendation that his ineffective assistance of counsel claim be denied.  (Petitioner's Objections ["Pet.'s Obj."] at 3-6.)  Specifically, Petitioner asserts that his "defense counsel's performance dropped below an objective standard of reasonableness in pursuing a demonstrably weak misidentification defense and failing to pursue . . . the justification defense."  (Pet.'s Obj. at 3.)

Under Strickland v. Washington, an attorney fails to provide

---

[1] Petitioner indicates that he has made five separate objections to Judge Pitman's Report.  However, he has objected to Judge Pitman's denial of a certificate of appealability separately from his objection to the legal standard Judge Pitman used to make that determination.  The Court has concluded that together these two issues comprise one objection.

effective assistance of counsel only if (1) his or her performance "fell below an objective standard of reasonableness" in light of prevailing professional norms, and if (2) this deficient performance prejudiced the defense, such that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 687-88, 694. Petitioner satisfies neither of the two prongs under the Strickland test.

The decision by Petitioner's defense counsel to raise a misidentification defense instead of the justification defense did not fall below an objective standard of reasonableness. "A lawyer's decision not to pursue a defense does not constitute deficient performance if, as is typically the case, the lawyer has a reasonable justification for the decision." DeLuca v. Lord, 77 F.3d 578, 588 n.3 (2d Cir. 1996). Judge Pitman cites Gonzalez v. Bennett, 2001 WL 1537553 (2001), another case in which a habeas petitioner believed that his counsel's failure to raise a justification defense at trial constituted ineffective assistance. The Gonzalez court stated:

> To the extent . . . that [petitioner's] challenge is based on hind-sight and disappointment, it does not warrant relief . . . . The record before the Court provides no basis for the Court to determine that the decision not to raise justification as a defense was not strategic, or that at the time [petitioner] disagreed with the strategy undertaken

3

>by trial Counsel. Indeed, it would not be an unreasonable strategy to select and present one theory of defense rather than introducing potentially confusing testimony to support two inconsistent statements.

<u>Gonzalez</u>, 2001 WL 153753 at *8 (internal citations omitted) (<u>cited in</u> report at 20-21). <u>See also</u> <u>Schmidt v. United States</u>, 173 F.3d 846, 846 (2d Cir. 1999) (questions of trial strategy are not to be second-guessed by the habeas court); <u>United States v. Eisen</u>, 974 F.2d 246, 265-66 (2d Cir. 1996) (decisions by defense counsel which fall within the ambit of trial strategy shall not be actionable in a habeas petition).

In Petitioner's case, as in <u>Gonzalez</u>, Defense Counsel reasonably determined that raising a justification defense alongside a misidentification defense would have confused the jurors. Asserting that Petitioner was justified in using deadly force against Brown would have contradicted any assertion that Petitioner was not the person who assailed Brown in the first instance. It is within a reasonable lawyer's discretion to determine that raising such contradictory defenses would confound a jury and therefore be detrimental to a criminal defendant's case. Petitioner fails to satisfy the first prong of the <u>Strickland</u> test.

Petitioner also does not succeed on the second prong of <u>Strickland</u>, which requires there to have been a reasonable

probability that Defense Counsel's performance was so deficient that, but for counsel's unprofessional errors, the result of the trial would have been different.[2] Strickland, 466 U.S. at 694. In this case, Petitioner must demonstrate that a reasonable jury might have decided in his favor on a properly argued justification defense.

Under New York law, a defendant who uses deadly force may avail himself of the justification defense "only if, among other things, (1) he subjectively believes that the use of deadly force is necessary, (2) a reasonable person in defendant's position would believe that the use of deadly force is necessary, and (3) the defendant does not 'know [ ] that he can with complete safety as to himself and others avoid the necessity of [using deadly force] by retreating.'" Brown v. Artuz, 124 F.3d 73, 81 (2d Cir. 1997) (quoting N.Y. Penal Law § 35.15(1)-(2)). Assuming arguendo that Petitioner subjectively believed his use of deadly force was necessary, Petitioner could not have satisfied the other two elements of the justification defense.

Even if, as Petitioner asserts, "Brown had previously thrown a bottle at him, had driven recklessly around a corner, had

---

[2] Strickland commands rejecting a petitioner's ineffective assistance of counsel argument even when just one of its two prongs is satisfied. 466 U.S. 697.

parked his car in a threatening manner, had exited his car in a hurry with a Club in his hand, and was approaching his car visibly angry and upset" (Pet.'s Obj. at 4), it was not reasonable for him to have believed that deadly force was necessary. Neither Brown's previous altercation with Petitioner nor Brown's quick, angry pace as he made his way to Petitioner's car reasonably merited Petitioner's belief that he would be subject to grave harm or death unless he shot a firearm at Brown. Cf. People v. Stridiron, 33 N.Y.2d 287, 291-92 (1973) (finding use of deadly force unreasonable where victim struck defendant with a pool cue and retreated); People v. Norwood, 133 A.D.2d 423, 423-24 (2d Dept. 1987) (justification defense not reasonable where defendant shot victim who approached him holding a brick); People v. Lopez, 113 A.D.2d 475, 481 (2d Dept. 1985) (unreasonable for defendant to have shot victim five times after victim lunged at him with a spike-like object).

Petitioner insists that Brown's having carried a club warranted his reasonable belief that deadly force was necessary, but he does not specifically controvert Judge Pitman's finding that "[t]here was no testimony that Brown raised the Club in a threatening manner or made any statements that could reasonably have led [P]etitioner to believe that Brown was going to use the Club to strike him." (Report at 16.) To the contrary, the

record indicates that Petitioner was in the shelter of his own car when Brown approached him with a club in his hand. Petitioner could not reasonably have thought while in the shelter of his car that deadly force was necessary to avoid his assailant approaching him with a club.

Petitioner also would not have been able to prove to a jury that he had no "duty to retreat". Though Petitioner alleges that his car was parked at an angle that partially blocked its mobility (Tr. at A 165, A 235-36, A 289-91), both DeWindt and Brown testified that after the shooting, Petitioner drove his car away from the scene. (Tr. at A 53, A 171.) Petitioner's flight after the shooting suggests that he knew he could have retreated from Brown's earlier threats.

Despite the strong evidence to the contrary, Petitioner argues that the justification defense was at least as strong as, if not stronger than, the misidentification defense. Petitioner cites DeLuca to support thsi argument. (Pet.'s Obj. at 6 (citing DeLuca, 77 F.3d at 584-86).) In DeLuca, a woman convicted of murder alleged that her lawyer denied her effective assistance when he opted not to raise an extreme emotional disturbance defense, despite very strong evidence that she had killed the victim after having just been raped by him. 77 F.3d at 585. Instead of the emotional disturbance defense, her attorney had

7

pursued both an uncorroborated justification defense and a poorly supported defense that Ms. DeLuca's husband committed the homicide.  Id. at 585-86.

Petitioner's case is distinguishable from DeLuca.  As the Court has explained supra, Petitioner's justification defense was, unlike the defense rejected by DeLuca's counsel, notably weak.  But Respondent also points to evidence that Petitioner's misidentification defense was stronger than any justification defense Petitioner might have raised.  For example, Respondent points out that certain witnesses to the crime did not identify Petitioner as the assailant.  (Resp.'s Answer at 20.)  Respondent further directs the Court to testimony from the detective that Brown did not identify Petitioner to the police after the crime.  (Id.)  The misidentification defense, therefore, seemed a reasonable one for Defense Counsel to pursue.

Petitioner's Defense Counsel chose the stronger of two inconsistent defenses.  His decision did not, as Strickland commands, "[fall] below an objective standard of reasonableness" in light of prevailing professional norms, nor is it likely that the decision actually impacted the outcome of Petitioner's trial.  An attorney's decision not to assert simultaneously the defenses of justification and misidentification is a "tactical decision

[to be] afforded wide latitude by reviewing courts." Fabian v. Herbert, 2003 WL 173910 at *6 (S.D.N.Y. 2003).

This Court hereby ADOPTS Judge Pitman's conclusion regarding Petitioner's Ineffective Assistance of Counsel claim. Petitioner's Ineffective Assistance claim is hereby DENIED.

B.  *Apprendi* Error

Petitioner does not object to Judge Pitman's finding that his criminal sentence constituted an error under Apprendi, but does object to Pitman's finding that such error was harmless. Respondent does not object to Judge Pitman's finding that Petitioner's Apprendi claim should be denied, but does object to Pitman's underlying finding that the sentence constituted an error under Apprendi. This Court does not adopt Judge Pitman's conclusion on this issue, and finds that Petitioner's sentence did not constitute an error under Apprendi.

Because New York at the date of Petitioner's offense classified assault in the first degree as a Class B felony, N.Y. Penal Law § 70.02(1)(a) (1998), the Sentencing Judge sentenced Petitioner according to the Class B felony sentencing requirements, which read:

> 3. Maximum term of sentence. The maximum term of an indeterminate sentence for a violent felony offense must be fixed by the court as follows:
>
> (a) for a class B felony, the term must be at least six years and must not exceed twenty-five years . . . .
>
> . . . .
>
> 4. Minimum term of imprisonment. The minimum period of imprisonment under an indeterminate sentence for a violent felony offense must be fixed by the court at one-half the maximum term imposed and must be specified in the sentence.

N.Y. Penal Law § 70.02 (3) & (4) (1998) (amended 1998) ("Sections 70.02(3) & (4)").

Petitioner claims that the Sentencing Judge erred in enhancing the minimum term of his sentence by five years pursuant to New York Penal Law Section 265.09(2) ("Section 265.09(2)), and thereby sentencing him to an indeterminate term of 17 ½ to 25 years. Section 265.09(1) prescribes:

> Notwithstanding any other provision of law to the contrary, when a person is convicted of criminal use of a firearm in the first degree . . . , the court shall impose an additional consecutive sentence of five years to the minimum term of an indeterminate sentence imposed on the underlying Class B violent felony offense where the person convicted of such crime displays a loaded weapon from which a shot, readily capable of producing death or other serious injury may be discharged, in furtherance of the commission of such crime, provided, however, that such additional sentence shall not be imposed if the court, having regard to the nature and circumstances of the crime and to

> the history and character of the defendant, finds on the record that such additional consecutive sentence would be unduly harsh and that not imposing such sentence would be consistent with the public safety and would not deprecate the seriousness of the crime.

N.Y. Penal Law § 265.09(2). Pursuant to these statutory provisions, the Sentencing Judge added the five-year enhancement to the minimum term of his indeterminate 12 ½ to 25 year sentence for the assault count, and sentenced him to an indeterminate term of 17 ½ to 25 years in prison.

According to Petitioner, the five-year enhancement violated his rights to due process and to a jury trial, as articulated in <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000). In <u>Apprendi</u>, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. Petitioner contends that the Sentencing Judge acted improperly under <u>Apprendi</u> by increasing the minimum term of his indeterminate sentence without a jury's having found that he "displayed a loaded weapon".

Respondent argues that Petitioner's sentence does not violate <u>Apprendi</u> because the Sentencing Judge did not increase Petitioner's sentence beyond any statutory maximum, but rather

increased Petitioner's minimum term.  Indeed, Apprendi, Harris v. United States, 536 U.S. 545 (2002), and their progeny make clear that a constitutional violation arises only when a Sentencing Judge engages in judicial fact-finding to raise a sentence above a statutory maximum:

> Apprendi said that any fact extending the defendant's sentence beyond the maximum authorized by the jury's verdict would have been considered an element of an aggravated crime – and thus the domain of the jury – by those who framed the Bill of Rights.  The same cannot be said of a fact increasing the mandatory minimum (but not extending the sentence beyond the statutory maximum), for the jury's verdict has authorized the judge to impose the minimum with or without the finding.

Harris v. United States, 536 U.S. 545, 558 (2002).  See also United States v. Holguin, 2006 WL 176982, at *6 (Jan. 26, 2006) (citing United States v. Estrada, 428 F.3d 387, 390 (2d Cir. 2005)) (concluding that judicial fact-finding resulting in an increased mandatory minimum is constitutional).

The statutory maximum term of imprisonment for Petitioner's offense is twenty-five years.  Petitioner has not been sentenced above that maximum.  Under the indeterminate sentence imposed on him, Petitioner will spend no more than twenty-five years in prison.  The sentencing judge's having raised the minimum term of imprisonment on his indeterminate sentence term, by definition, does not fall under the Apprendi rubric.

Petitioner argues that New York parole rules suggest otherwise. In other words, at the time of Petitioner's crime, a defendant sentenced to an indeterminate term was not eligible for parole until the minimum term expired. N.Y. Penal Law § 70.40(1)(a)(I) (1998). Thus, the Sentencing Judge enhanced Petitioner's sentence from 12 ½ years of nonparolable imprisonment and 12 ½ years of parolable imprisonment, to 17 ½ years of nonparolable imprisonment and 7 ½ years of parolable imprisonment. Judge Pitman agreed with Petitioner that increasing the term under which Petitioner was not eligible for parole constituted an increase beyond the statutory maximum.

This Court does not adopt Judge Pitman's finding on this point. There is no federal or state constitutional right to be released to parole supervision before serving a full sentence, and accordingly, the state has discretion to place restrictions on parole release without fact-finding by a jury. See People ex rel. Stevenson v. Warden, Rikers Island, 24 A.D.3d 122 (N.Y. 1st Dept. 2005) (citing Matter of M.G. v. Travis, 236 A.D.2d 163, 167 (1st Dept. 1997)). "Neither the mere possibility of release nor a statistical probability of release gives rise to a legitimate expectancy of release on parole. Barna v. Travis, 239 F.3d 169, 171 (2d Cir 2001) (internal citations omitted). See also Paunetto v. Hammock, 516 F. Supp. 1367, 1367-68 (S.D.N.Y. 1981);

**Freeman v. New York State Div. of Parole**, 21 A.D.3d 1174, 1175 (N.Y. 3d Dept. 2005) ("[New York] does not create an entitlement to release on parole and therefore does not create interests entitled to due process.").

Even though Petitioner's nonparolable term of imprisonment was increased from 12 ½ to 17 ½ years, Petitioner has no reason, nor did he ever have reason under federal or state law to expect that he would be released on parole before the completion of twenty-five years. Should he be released after 12 ½ years, 17 ½ years, or another amount of time not more than 25 years, either because of a discretionary decision made by state parole officials or for some other reason, his term of imprisonment will not be in excess of the statutorily prescribed maximum.

This Court concludes that the Sentencing Judge committed no constitutional error under **Apprendi**. Accordingly, this Court deems it unnecessary to address, as did Judge Pitman, which type of **Apprendi** violations may constitute harmless error.

C.   *Brown* Objections

Petitioner objects to Judge Pitman's finding that the federal district court is bound to the New York court's construction of the sentencing statute. (Pet.'s Obj. at 11.)

Specifically, Petitioner believes that the Sentencing Judge failed to appropriately apply New York law as dictated in <u>People v. Brown</u>, 67 N.Y.2d 555, 561 (1986) (<u>per curiam</u>) (overturning defendant's concurrent convictions for first degree robbery and first degree criminal use of a weapon because "[w]hen use of or display of a firearm is an element of a class B felony, the use or display of that same firearm cannot also be the predicate for criminal display of a firearm in the first degree").

This Court is "bound to accept [the state] court's construction of that State's statutes." <u>Missouri v. Hunter</u>, 459 U.S. 359, 368 (1983). In Petitioner's case, the New York Appellate Division did not reason that <u>Brown</u> was applicable to Petitioner's sentence. Instead, that court interpreted the statute as specifically authorizing cumulative or additional punishment, <u>People v. Rhodes</u>, 281 A.D.2d 225, 227 (N.Y. 1st Dept. 2001), and absent an overruling from the New York Court of Appeals, this Court is bound to accept this construction.

Petitioner contends that this Court nonetheless should consider the ramifications of <u>Brown</u> on his sentence because that case has implications for the Double Jeopardy Clause. However, "[w]here . . . a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the same conduct . . . , a court's task of

15

statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial." Missouri v. Hunter, 459 U.S. 359, 368-69 (1983) (internal citations and quotations omitted). See also United States v. Khalil, 214 F.3d 111, 119-20 (2d Cir. 2000) (a court's finding that defendant used or carried a firearm constitutionally authorizes it to enhance the criminal sentence for the underlying crime of violence when the legislature provides that the enhancement may be 'in addition to punishment provided for such crime of violence.').

The language of the statute which led to Petitioner's sentence enhancement not only authorizes cumulative punishment according to New York's Appellate Division, but also bears no principled difference from the language of the statutes in Khalil and Hunter. New York Penal Law § 265.09(2) requires a Sentencing Judge to "impose an additional consecutive sentence of five years to the minimum term of an indeterminate sentence imposed on the underlying Class B violent felony offense," in much the same way that the statute in Khalil authorized an enhancement "in addition to" punishment for an underlying crime. Because the statute under which Petitioner was sentenced is similar to the statutes considered in Hunter and Khalil, and because interpretation of Petitioner's sentencing statute is a task reserved for a state

court, this Court hereby ADOPTS Judge Pitman's conclusion on this issue.

D. <u>Certificate of Appealability</u>

Petitioner also objects to Judge Pitman's recommending that the Court decline to issue a certificate of appealability. Because the Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. 28 U.S.C. § 2253; <u>see</u> <u>United States v. Perez</u>, 129 F.3d 255, 260 (2d Cir. 1997). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith. <u>See</u> <u>Coppedge v. United States</u>, 369 U.S. 438, 8 L. Ed. 2d 21, 82 S. Ct. 917 (1962).

## II. <u>CONCLUSION</u>

ORDERED AND ADJUDGED as follows: the Report and Recommendation of United States Magistrate Judge Henry Pitman, dated March 16, 2005, is APPROVED, ADOPTED, and RATIFIED by the Court in its entirety, with the exception that this Court finds that Petitioner's sentence was not erroneous under <u>Apprendi</u>.

Accordingly, Rhodes' motion to set aside his sentence pursuant to 28 U.S.C. § 2255 is hereby DENIED. A certificate of appealability SHALL NOT ISSUE in this case.

The Clerk of the Court is DIRECTED TO CLOSE this case and remove it from the docket.

SO ORDERED.

Dated:  New York, New York
        August 23, 2006

*Deborah A. Batts*
Deborah A. Batts
United States District Judge